COMPLAINT AND INVESTIGATION

1:26CV2286

## I. PRELIMINARY STATEMENT

This document sets forth facts and circumstances that Complainant, Jeremiah Lyles, believes warrant formal investigation by appropriate law enforcement and regulatory authorities.

The following sections identify: (1) discrepancies and irregularities in the probate proceeding for the Estate of Gloria Lyles in Chester County, Pennsylvania; (2) an identity-theft and mail-diversion concern involving a Philadelphia municipal pension account; and (3) open questions about the handling of estate assets, including a bank account and real property. Concurrent state and federal jurisdiction may apply depending on investigators' findings, as detailed in Section II.

Each item below is supported by documentary evidence identified as Exhibits A through I in Section VI. Complainant has attempted throughout to distinguish between facts directly shown by the attached documents and matters that require further investigation before any conclusion can be drawn. Where Complainant believes a statute may have been violated, that is noted as a possible violation for investigators to evaluate. Complainant may have additional investigative leads or supporting information relevant to this matter and will provide them upon request.

FILED
HARRISBURG, PA
AUG 10 2026
JB
PER DEPUTY CLERK

## II. POSSIBLE STATUTORY VIOLATIONS AND AREAS FOR INVESTIGATION

### *A. Commonwealth of Pennsylvania — Areas for Investigation*

1. Possible violation of 20 Pa. Cons. Stat. § 3132 / Pa. R. Evidence 901—903 (Authenticity of Probated Instrument). The Will admitted to probate was a photocopy rather than the original (see Exhibit B, Exhibit E). Investigators should determine whether the photocopy was properly authenticated and whether the underlying "lost will" narrative can be independently corroborated.

2. Possible violation of 18 Pa. Cons. Stat. § 4120 (Identity Theft). Complainant's name was used, without his knowledge or authorization, to register a P.O. Box with the Philadelphia Board of Pensions and Retirement (see Exhibit F, Exhibit G). Investigators should determine who opened this box and for what purpose.

3. Possible violation of Pa. Orphans' Court Rule 10.5 (Notice of Beneficial Interest). Complainant did not receive formal notice of the probate proceeding as a potential heir. Investigators should determine whether this was the result of an oversight, an incomplete understanding of the family's history at the time of filing, or a deliberate omission, and whether formal notice was in fact required given the information available to the petitioner at the time.

4. Possible violation of 18 Pa. Cons. Stat. § 4902 / § 4903 (Perjury / False Swearing) — as to the specific sworn relationship claim. Exhibit A states, as a specific factual averment, that Earlean Sussman is the decedent's sister. Complainant does not currently have independent proof that this statement is false and requests verification rather than asserting a violation has occurred.

5. Areas for investigation regarding estate administration. Complainant requests that investigators review whether the attorney of record, Mark S. Harris, Esq., and the appointed executor, Earlean Sussman, fulfilled their respective duties to the estate and to all potential beneficiaries, including Complainant, in connection with the filings described in Section III.

### *B. Federal Areas for Investigation*

6. Possible violation of 18 U.S.C. § 1028 (Fraud and Related Activity in Connection with Identification Documents), 18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail), and 18 U.S.C. § 1001 (Statements or Entries Generally). Investigators should determine who registered P.O. Box 692, Jenkintown, PA 19046 using Complainant's name without his authorization — including what identifying information was submitted to the U.S. Postal Service, a federal agency, to open the box — and whether mail addressed to Complainant was knowingly diverted to that box or converted to another's use (see Exhibits F and G).

7. Possible violation of 18 U.S.C. § 1028A (Aggravated Identity Theft). This charge requires that identity theft occur during and in relation to an enumerated predicate felony. Investigators should first establish whether a predicate federal offense occurred (e.g., under Item 6 above) before evaluating whether the aggravated identity theft element is met.

8. Areas for investigation — Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343). The underlying mailing itself is already addressed under Item 6 above (18 U.S.C. § 1708, Theft or Receipt of Stolen Mail). Investigators should determine whether communications or fund transfers related to the pension account (Y-217457-0) were routed through the unauthorized P.O. Box or through electronic channels in a manner that would support these charges. Complainant does not have direct evidence of this at this time and asks that investigators review pension account records to make this determination.

9. Areas for investigation — Conspiracy (18 U.S.C. § 371). Investigators should determine whether there was coordination between any party connected to the P.O. Box registration. Complainant is not aware of direct evidence of such coordination and raises this only as a question for investigators to resolve.

10. Contingent area for investigation — Obstruction (18 U.S.C. § 1519). If, in the course of the records requests set out in Section V below, the Jenkintown Post Office or the Board of Pensions is unable to produce the P.O. Box 692 signature card or the underlying address-change records — whether because they were destroyed, altered, or cannot be located — investigators should determine whether such destruction or unavailability was authorized in the ordinary course of business or whether it may constitute obstruction under 18 U.S.C. § 1519. Complainant has no current evidence that any record has been destroyed or altered and raises this solely as a contingency to be evaluated once the requested records are sought.

### *C. Civil and Administrative Matters for Review*

11. Possible negligence / breach of fiduciary duty — Philadelphia Board of Pensions and Retirement. The Board accepted a change of mailing address on Pension Account No. Y-217457-0 without, so far as Complainant is aware, verifying the requester's identity (see Exhibit F, Exhibit G). Complainant asserts this potentially falls short of the Board's general administrative duties under Philadelphia Code Title 22, § 22-1201 ("General Powers and Duties of the Board"), and of the common-law prudent-person fiduciary standard applicable to public pension trustees under Pennsylvania law. Investigators should determine what identity-verification procedures, if any, the Board had in place at the relevant time and whether they were followed. Complainant notes that the Board's published Summary Plan Description (Exhibit H) is a general member handbook and does not itself set out specific identity-verification procedures for address changes; it is not cited here as the source of any duty. If the Board maintains separate internal administrative procedures governing address changes, Complainant asks that investigators request and review them directly from the Board.

Complainant asks that investigators evaluate whether the unauthorized registration of the P.O. Box 692 address — if it involved unauthorized access to the Board's computer system using Complainant's or the decedent's personal information (e.g., name combined with Social Security number or account number) — itself satisfies the definition of a "breach of the security of the system" under the Pennsylvania Breach of Personal Information Notification Act (BPINA, 73 P.S. §§ 2301—2329), which would trigger the Board's notification obligations under that Act. Complainant notes that BPINA does not create a private right of action and is enforced solely by the Pennsylvania Attorney General as an unfair trade practice; accordingly, Complainant requests that any BPINA finding be referred to the Office of Attorney General rather than treated as a basis for a claim by Complainant individually.

12. Possible breach of fiduciary duty — Estate Administration. Investigators should determine whether Mark S. Harris, Esq. acted appropriately in his capacity as filing attorney, including whether his role as personal counsel to Earlean Sussman (if applicable) created any conflict with his obligations to the estate as a whole. Should investigators determine that any filing described in Section III.B contained a material misstatement Mr. Harris knew or should have known to be false, the Pennsylvania Rules of Professional Conduct,

204 Pa. Code § 81.4, Rule 3.3 (Candor Toward the Tribunal) and Rule 8.4 (Misconduct) would be the relevant provisions for the Office of Disciplinary Counsel to evaluate; if the concern is instead one of inadequate diligence rather than knowing misstatement, Rule 1.1 (Competence) would be the more relevant provision. Complainant does not currently have evidence establishing which, if any, of these standards was not met, and asks that investigators and Disciplinary Counsel make that determination independently.

13. 20 Pa. Cons. Stat. § 3181 — Grounds for Revocation of Letters. Investigators and the Register of Wills should determine whether any material misstatement was made in the probate filings — including the relationship claim addressed in Section II.A, Item 4 above — that would warrant review of the letters testamentary issued to Earlean Sussman.

14. Areas for investigation — Unjust Enrichment / Conversion. Should Complainant's status as an heir be independently confirmed, investigators should determine whether estate assets or executor authority were exercised in a manner inconsistent with that status.

15. Gross Negligence — Philadelphia Board of Pensions and Retirement. See Item 11 above. Investigators should determine what steps, if any, the Board took after being notified of the disputed address by Complainant (see Exhibit G), and whether its response was adequate.

## III. DETAILED STATEMENT OF FACTS

### *A. Identity Theft, Pension Fraud, and Mail Interception*

1. Complainant's name was used to register P.O. Box 692, Jenkintown, PA 19046 with the Philadelphia Board of Pensions and Retirement, without his knowledge or consent (Exhibit G). Complainant, who resides in California, has never had access to or control over this P.O. Box and was unaware of its existence until receiving the correspondence described below (Exhibits F and G).

2. On October 18, 2023, the Board of Pensions and Retirement sent a letter regarding Pension Account No. Y-217457-0 (Estate of Gloria Lyles) to "Jeremiah Lyles" at the P.O. Box address, referencing a $573.85 pension overpayment (Exhibit F).

3. When Complainant contacted the Board directly, he was informed that the Board's primary interest was recovering the overpayment; Complainant did not receive confirmation that the fraudulent address registration itself would be investigated (Exhibit G).

4. Complainant requests that investigators determine: (a) who opened P.O. Box 692 and when; (b) whether the Jenkintown Post Office retains a signature card identifying the box holder; (c) what identity-verification steps, if any, the Board took before accepting the address change; and (d) whether any prior communications or account activity were diverted to this address before Complainant became aware of it.

### *B. Probate Filings — Chronology*

5. On February 8, 2023, a "Petition for Grant of Letters" was filed with the Chester County Register of Wills under File No. 15-23-0310 (Exhibit A). Complainant is not currently aware of any inaccuracy in this filing and does not allege false swearing in connection with it. Complainant's concern is instead that he did not receive formal notice of the proceeding as a potential heir, addressed in Section II.A.3 above.

6. Earlean Sussman was named in the petition as sister of the decedent and primary petitioner (Exhibit A). This relationship — "Sister" — is stated as a specific factual averment on a sworn document. Complainant states that he has long understood, based on family history, that Ms. Sussman's biological relationship to the decedent has been a subject of question within the family, predating any dispute over this estate. Complainant does not offer this as proof and asks that investigators independently verify the claimed relationship (see Section V, Item 2 below).

7. On February 24, 2023, an Unavailable Witness Affidavit was filed, in which Earlean Sussman swore that witness Michael Sokil could not be located to prove his signature on the Will, stating the reason as "unable to locate the witness/no known address" (Exhibit A-1). Complainant understands this to be a standard procedural mechanism under Pennsylvania probate practice generally. However, the Will itself lists two subscribing witnesses — Jordan Brunetti and a second, not clearly legible signature — both sharing the address 7106 Germantown Ave, Philadelphia, PA 19119 (Exhibit D). Investigators should determine whether this second witness is in fact Michael Sokil, and if so, whether the address appearing on the Will is consistent with Sussman's sworn statement that his address was unknown. Complainant does not allege the signature itself is forged and has no evidence of alteration; this is raised solely as a documentary discrepancy for investigators to resolve.

8. On March 8, 2023, a "Petition for Probate of Copy of Lost Will" was filed (Exhibit B). The petition states that attorney Jerry Schuchman, who prepared the Will, confirmed he did not retain the original, and that a photocopy was submitted to the Register believing it to be the original before discovering otherwise. Complainant notes that this petition does not itself address the question of heirs or biological children; his notice-related concerns are set out separately in Section II.A.3.

9. Complainant further notes that the filed record does not include any affidavit, oath, or other sworn statement addressing Jordan Brunetti — the first-listed, clearly legible subscribing witness — at all. Under 20 Pa. C.S. § 3132, and as confirmed by the Pennsylvania Supreme Court in In re: Estate of Wilner, 636 Pa. 277, 142 A.3d 796 (2016), proof of due execution of a lost or copied will — i.e., the genuineness of the testator's signature — requires the oaths of two competent witnesses; the Supreme Court's 2016 decision relaxed the evidentiary standard only as to a will's contents, not as to due execution. Here, only Michael Sokil has been addressed by affidavit or oath; Jordan Brunetti, the Will's other subscribing witness, has not. Complainant does not currently have evidence that this gap was known or concealed by any filer; absent such evidence, this is raised as a procedural defect in the probate record — relevant to the Section II.C, Item 13 request that letters testamentary be reviewed — rather than as an allegation that 18 Pa.C.S. §§ 4902/4903 or § 4904 were violated. Should investigators determine the gap was known to the filer and misrepresented as complete, those statutes would become the relevant provisions to evaluate. Complainant notes that a defect of this kind would generally render the Decree voidable — subject to challenge within the appeal period discussed in Section IV — rather than void ab initio; accordingly, this point is offered in connection with the timeliness analysis in Section IV, not as a basis for treating the Decree as a nullity independent of that analysis.

10. Complainant further notes that content-corroboration for the photocopy admitted to probate consists, on the current record, of the petitioner's own averment that the copy accurately reflects the original (Exhibit B, ¶10). Under 20 Pa. C.S. § 3132, as construed by In re: Estate of Wilner, 636 Pa. 277, 142 A.3d 796 (2016), a proponent may satisfy the content prong with one adequately corroborated witness — but the Supreme Court's holding presupposes independent corroboration exists; it did not hold that a petitioner's own uncorroborated assertion suffices. Complainant is not aware of any independent corroboration of content in the filed record — such as a second copy, drafting file, or independent witness statement regarding the will's terms — beyond the petitioner's own averment, and asks investigators to confirm whether any such corroboration exists. (Complainant notes, for investigators' general reference only, that this mirrors the standard in the Federal Rules of Evidence governing duplicates, Fed. R. Evid. 1003, though that rule does not itself govern this state probate proceeding.)

11. The Oath of Non-Subscribing Witness addressing Michael Sokil's familiarity with the decedent's signature (Exhibit B-1) was sworn before a notary on February 27, 2023, but was not filed with the Register of Wills until March 13, 2023 — the same date the Register issued the Decree admitting the photocopy to probate (Exhibit E), and five days after the underlying Petition for Probate of Copy of Lost Will was filed on March 8, 2023 (Exhibit B). Complainant flags this thirteen-day gap between the oath being sworn and its filing, and its filing on the same date as the Decree, for investigators to resolve via the Register of Wills' docket and internal file-stamping records, and does not allege that it reflects intentional wrongdoing absent further information. This sequencing question is relevant to Item 9 above: if the Register's file did not contain proof addressing Michael Sokil until the same date the Decree was issued, that bears on whether the record before the Register was complete as to due execution — including the still-unaddressed second witness, Jordan Brunetti — at the time the Decree was granted.

12. On March 13, 2023, the Register of Wills issued a Decree admitting the photocopy of the Will to probate "as if it were the original" (Exhibit E).

### *C. Estate Asset Questions*

13. The decedent owned real property at 7320 Ogontz Avenue, Philadelphia, PA, which served as Complainant's residence before he became incapacitated in California. Complainant's personal belongings remained in the house. The circumstances of the property's sale are addressed in Section V.

14. Complainant previously had contact with PNC Bank regarding an account connected to the decedent (Exhibit I, Complaint Reference 223360754213). The Bank's case manager, "Alicia A," sent correspondence dated December 29, 2023 acknowledging Complainant's inquiry and requesting a callback. Complainant's follow-up contact with this individual was unsuccessful, and Complainant is aware that she is no longer employed at PNC Bank; the timing and reason for her departure are unknown to Complainant and are noted here only as a question for investigators, not as an allegation of wrongdoing on her part. Investigators should request complete account records, statements, and transaction history directly from PNC Bank, as the available correspondence does not by itself establish an account balance or disposition of funds, and make them available to Complainant.

## IV. NAMED SUBJECTS AND SCOPE OF REQUESTED INVESTIGATION

The following individuals and entities are identified as having involvement in the matters described above. Their inclusion here reflects their role in the relevant filings, communications, or circumstances; it is not an assertion of wrongdoing on the part of any individual. Each person or entity named below is presumed to have committed no violation of law unless and until investigators, and any authority with jurisdiction to make that determination, conclude otherwise. Complainant asks that investigators reach their own independent conclusions based on a full review of the record.

— Philadelphia Board of Pensions and Retirement — as custodian of Pension Account No. Y-217457-0 and recipient of the disputed address change.

— Mark S. Harris, Esq. — as filing attorney for the probate petitions described in Section III.B.

— Earlean Sussman — as petitioner, appointed executor, and affiant on the filings described in Section III.B.

— Unknown individual(s) who registered P.O. Box 692, Jenkintown, PA 19046 in Complainant's name.

— Unknown individuals in the state of California who have consistently over the years invaded Complainant's privacy, photographed Complainant's personal information in public places, intercepted his mail, threatened to steal from him and thereby incapacitate Complainant, and similar events.

— Any other unidentified individual(s) who participated in, facilitated, or benefited from the conduct described in this document, including any such individual(s) who may be located in the state of California.

Investigators are asked to determine, in the first instance, whether the Board of Pensions and Retirement — as a Philadelphia local agency — is subject to governmental immunity under Pennsylvania's Political Subdivision Tort Claims Act (general immunity grant at 42 Pa. Cons. Stat. § 8541; statutory exceptions at § 8542), and if so, whether any of the Act's nine statutory exceptions apply to the conduct described in Section III.A. Complainant notes for investigators' awareness that none of the nine current exceptions under § 8542(b) (vehicle liability, care/custody/control of personal property, real estate, trees/traffic controls/street lighting, utility service facilities, streets, sidewalks, animals, and the 2019 sexual abuse amendment) appear on their face to encompass administrative failures in identity verification or data handling, meaning the Board itself may retain immunity for this conduct absent one of these exceptions applying. Investigators should separately determine whether individual employee conduct might fall outside that immunity under 42 Pa. Cons. Stat. § 8550 if actual fraud, crime, or willful misconduct — rather than mere negligence — is shown as to a specific employee.

Timeliness Note: Under 20 Pa.C.S. § 908(a), an appeal from a decree of the Register of Wills must generally be filed within one year of the decree — here, March 13, 2023. Pennsylvania courts have held that a claim of fraud does not automatically extend this deadline where the record shows the challenging party had earlier notice or reasonable means to discover the underlying problem within the one-year window (see In re: Estate of Robert Torrens, 2708 EDA 2024 (Pa. Super. 2025)). Complainant was incapacitated during the relevant period, which prevented him from receiving notice of the proceeding or discovering the matters described herein within that window. Investigators and any reviewing counsel should evaluate whether this incapacity supports application of the discovery rule to preserve Complainant's ability to challenge the decree notwithstanding the one-year deadline.

## V. ACTIONS REQUESTED

Complainant respectfully requests the following:

1. Verification of Earlean Sussman's claimed relationship to the decedent as "Sister," as sworn in Exhibit A, including by DNA comparison if a court determines this is appropriate. Complainant notes this request is directed solely at verifying the specific sworn statement in Exhibit A and Sussman's resulting standing to petition as an heir; it is not offered as an assertion that the claim is false.

2. Forensic accounting of Pension Account No. Y-217457-0, including all distributions, transfers, and benefit payments from account creation through the present and identification of who requested the P.O. Box 692 address change and when.

3. Records request to the Jenkintown Post Office for the signature card or opening records for P.O. Box 692, to support the negligence and other claims.

4. Production of the beneficiary designation currently on file for Pension Account No. Y-217457-0, together with a review of internal Board access logs and personnel records for the relevant period. The Board's own Summary Plan Description (Exhibit H) confirms that maintaining a valid beneficiary designation determines who receives benefits in the event of a member's death, and sets out a fixed order of default beneficiaries (spouse, natural or adopted child, parents, estate) when no valid designation exists. Complainant requests that investigators obtain the designation on file, confirm when it was last modified and by whom, and determine whether it is consistent with the decedent's Will (Exhibit D) and with Complainant's asserted relationship to the decedent. Complainant asks that investigators consider both possibilities in evaluating who made the change: (a) an outside party who fraudulently accessed the account by impersonating an authorized party, and (b) whether any Board employee or agent with direct system access to beneficiary records processed or facilitated the change without proper verification. Complainant has no current evidence favoring one possibility over the other and asks that investigators reach their own conclusion based on the account and personnel records. Complainant requests a complete audit of the account, all to be presented to Complainant.

5. Records request to PNC Bank for complete statements and transaction history on any account connected to the decedent or the estate, and delivered to Complainant.

6. Review by the Chester County Register of Wills of the filing-sequence discrepancy identified in Section III.B ¶11 — specifically, the thirteen-day gap between the Oath of Non-Subscribing Witness being sworn (February 27, 2023) and filed (March 13, 2023, the same date as the Decree) — and confirmation of the proper filing sequence for Exhibits B, B-1, and E.

7. Referral to the Pennsylvania Office of Disciplinary Counsel under the Pennsylvania Rules of Professional Conduct, 204 Pa. Code § 81.4 (see Rules 1.1, 3.3, and 8.4 as discussed in Section II.C, Item 12), if investigators determine after review that Mark S. Harris, Esq. submitted materially false documents to the Register of Wills — but not before such a determination is made.

8. Referral to the Pennsylvania Office of Attorney General for evaluation of a possible BPINA violation, per the BPINA discussion in Section II.C following Item 11, should investigators determine that the P.O. Box registration meets the statutory definition of a breach, with a copy of their findings deliverable to Complainant.

9. Investigation into the sale of the real property at 7320 Ogontz Avenue, Philadelphia, PA (see Section III.C ¶13), including: (a) the date and amount of sale; (b) whether net proceeds were deposited into an account in the decedent's name; (c) how those proceeds were used; and (d) whether any proceeds were misappropriated or concealed in anticipation of probate with findings delivered to Complainant.

Complainant provides the following baseline figures as a reference point to assist investigators in understanding the potential scope of detriment — $250,000, $140,100, for a total of $390,100 — which were taken from known public information, having no bearing on what is, or was; it was chosen as a liberal amount.

Complainant acknowledges that actual restitution, once any federal or state crime is established, shall be determined by a court of competent jurisdiction based upon conviction and in accordance with 18 U.S.C. § 3663A (Mandatory Restitution — Property and Fraud Offenses). This baseline metric is presented solely to assist investigators in understanding the potential scope of loss during their investigation and verification.

## VI. LIST OF EXHIBITS AND ATTACHED DOCUMENTS

Exhibits A, B, C, D, and E are physically attached to this complaint. Exhibits A-1, B-1, and H are part of the public record or court file described below and are not physically attached; investigators may obtain them directly from the identified custodian.

Exhibit A — Petition for Grant of Letters, filed Feb. 8, 2023, Chester County Register of Wills, File No. 15-23-0310.

Exhibit A-1 — Unavailable Witness Affidavit, filed Feb. 24, 2023, Chester County Register of Wills. (Not physically attached; on file with the Register of Wills, Chester County, File No. 15-23-0310.)

Exhibit B — Petition for Probate of Copy of Lost Will, filed Mar. 8, 2023, Chester County Register of Wills.

Exhibit B-1 — Oath of Non-Subscribing Witness, sworn February 27, 2023 before notary Tyrone Manning, filed March 13, 2023, Chester County Register of Wills (addresses Michael Sokil's familiarity with the decedent's signature only; does not address the Will's second subscribing witness, Jordan Brunetti). (Not physically attached; on file with the Register of Wills, Chester County, File No. 15-23-0310.)

Exhibit C — Verification to the Petition for Probate of Copy of Lost Will, sworn Feb. 28, 2023, before notary Lisa M. Ajdaharian.

Exhibit D — Last Will and Testament of Gloria Lyles, dated January 25, 2019 (Article VII, Executor clause, and witness page).

Exhibit E — Decree of the Register of Wills of Chester County, Pennsylvania, dated March 13, 2023.

Exhibit F — Board of Pensions and Retirement Letter, dated October 18, 2023, addressed to "Jeremiah Lyles" at P.O. Box 692, Jenkintown, PA 19046.

Exhibit G — Statement of Complainant Jeremiah Lyles, describing the P.O. Box discovery, contact with the Board of Pensions, and related concerns.

Exhibit H — Philadelphia Board of Pensions and Retirement, Summary Plan Description (Plans A, B, L, and Y), Rev. 5/2013. (Publicly available document; not physically attached due to length. Investigators may obtain a copy directly from the Philadelphia Board of Pensions and Retirement.)

Exhibit I — PNC Bank Correspondence, dated December 29, 2023, Case Manager Alicia A, Complaint Reference 223360754213.



Hon. Matthew Brann
228 Walnut St
Harrisburg, PA 17101

RECEIVED
HARRISBURG, PA
AUG 10 2026
PER ______
DEPUTY CLERK